The Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11   UNITED STATES OF AMERICA,

12                    Plaintiff,          NO. CR20-172 JCC

13

14              v.                        UNITED STATES' OPPOSITION TO
                                          DEFENDANT'S EMERGENCY MOTION
15   RAYMOND NG,                          TO SHOW CAUSE

16                    Defendant.          Noting Date: December 24, 2020

17

18        The United States of America, by and through Brian T. Moran, United States

19   Attorney for the Western District of Washington, and Nicholas Manheim, Assistant

20   United States Attorney for said district, opposes Defendant's "Emergency Motion for an

21   Order to Show Cause" (Dkt. 51). Defendant Raymond Ng's motion asks the Bureau of

22   Prisons (BOP) to explain why Ng has not been able to communicate with his attorney,

23   and this filing and the accompanying declaration provide that explanation. Because Ng

24   has received the relief he sought, the Court should deny his motion.

25        As explained in the attached declaration, the SeaTac Federal Detention Center

26   (FDC) is suffering from a spike in inmates and staff who have tested positive for

27   COVID-19. In light of the increased risk of infection, the FDC has temporarily suspended

28   routine legal calls for inmates with active COVID-19 infections. This has not stopped all

*U.S. v. Ng*; CR20-172 JCC
United States' Opposition to Motion to Show Cause - 1

communications between attorneys and inmates who have tested positive for COVID-19 as they can still send and receive written correspondence and can have calls when ordered by a Court or in case of an emergency. As inmates recover from COVID-19, they will be moved to units where they can again access phones for routine legal calls, and the FDC is scheduled to lift the temporary restrictions on inmates with active COVID-19 infections on January 4, 2020, health conditions permitting. In short, to avoid spreading COVID-19 to other inmates and staff, the FDC is temporarily restricting routine access to legal calls for only those inmates who pose the greatest risk of spreading the virus. These restrictions are reasonable and necessary, and do not violate Ng's constitutional rights.

## I.    FACTUAL BACKGROUND

### A.    Summary of Investigation

Since 2017, U.S. Postal Inspectors in multiple jurisdictions around the country, as well as the King County Sheriff's Office (KCSO), have been investigating a vast network of individuals who cultivate large quantities of marijuana in Washington State in violation of state and federal law, and then ship the marijuana throughout the United States, including to Illinois, New Jersey, and Pennsylvania. Many of these individuals grew marijuana in suburban houses in the greater Seattle area. Some of the members then collected marijuana at "stash" or "shipping" houses where they packaged and then shipped it to co-conspirators in other states, where they collected and redistributed the marijuana.

On October 14, 2020, a grand jury issued an indictment charging Ng and his girlfriend Qifang Chen with Conspiracy to Manufacture and Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The same day, the grand jury issued indictments charging nine other defendants with drug trafficking crimes related to the same investigation.

On October 27, 2020, Magistrate Judge Tsuchida ordered that Ng be detained pending trial. Dkt. 27. Ng moved for this Court to review the detention order, and on November 23, 2020, this Court denied that motion. Dkt. 45.

*U.S. v. Ng*; CR20-172 JCC
United States' Opposition to Motion to Show Cause - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

That same day, the parties filed a stipulated motion to continue the trial date to June 28, 2021. Dkt. 44. The Court granted the motion and set the trial date for June 28, 2021. Dkt. 48.

**B.      Temporary Restriction on Legal Calls**

Since the outbreak of COVID-19, the FDC has made every effort to comply with BOP and CDC guidance to protect inmates' health and well-being while also protecting and respecting their rights.[1] Some of these procedures have affected the ways in which inmates have been able to communicate with their attorneys and the frequency with which they have had such contact. For example, inmates with active COVID-19 infections could not go to the common telephone areas to contact their attorneys. Instead, staff members would bring phones to inmate cells and wait in open, common areas for the calls to conclude. While this procedure decreased the risk that inmates with active COVID-19 infections would spread the virus, it did not eliminate that risk and still exposed staff to the virus in order to allow inmates to make legal calls.

As this shows, when an inmate tested positive for COVID-19, the infection affected not only the inmate who tested positive, but others as well. A positive COVID-19 test for one inmate requires the FDC to reconsider the isolation and quarantine status of other inmates who had contact with the infected inmate. The FDC in turn must determine what steps to take with the infected inmate's unit. These changes in isolation and quarantine status—and other disruptions common to prisons—have caused the FDC to cancel and reschedule planned communications between inmates and their attorneys.

Despite the measures taken by the FDC to prevent the spread of COVID-19, the FDC had 85 inmates and 16 staff test positive for COVID-19 on December 16, 2020. Five days later—on December 21, 2020—the FDC learned of an additional 39 inmates who had tested positive for the virus. In response to this spike in COVID-19 cases, the FDC temporarily stopped having staff members bring telephones to infected inmates'

---

[1] The facts from this section reflect the information in the Declaration of Associate Warden Patrick Deveney, attached as Exhibit A.

*U.S. v. Ng*; CR20-172 JCC
United's Opposition to Motion to Show Cause - 3

1  cells for routine legal calls in order to protect the health and well-being of other the staff

2  members an other inmates. Inmates, however, can continue to communicate with their

3  attorneys through written correspondence, and telephone calls can be made in response to

4  Court orders or in case of an emergency. The FDC is also working to reassign inmates

5  who no longer pose a risk of further contagion to units where they can resume making

6  routine legal calls. This restriction on routine legal calls is temporary, and the FDC has

7  set January 4, 2020, as the date on which it will resume scheduling such calls if health

8  conditions permit.

## II.    ARGUMENT

10  Ng has filed an emergency motion for an order to show cause why he "has been

11  denied his right to communicate with counsel," and the attached declaration from Patrick

12  Deveney provides that explanation. In short, the FDC has had to limit the availability of

13  telephone calls between attorneys and inmates in order to protect inmates and staff from

14  COVID-19. At times, the FDC's efforts to protect inmates and staff have resulted in

15  canceled and rescheduled calls with counsel. More recently, the FDC has had a spike in

16  inmates and staff with active COVID-19 infections, and the FDC has had to suspend

17  temporarily routine legal calls between attorneys and infected inmates. But this does not

18  stop Ng and others from communicating with their attorneys by written correspondence

19  or, in the case of an emergency or court order, by telephone. These responses to COVID-

20  19 account for Ng's difficulties conducting routine legal calls, and the FDC is taking

21  steps that will allow such calls to resume again soon. Ng has received the explanation and

22  relief he requested, and his motion should be denied as moot.

23  While the government has given Ng the relief he requested, doing so is not a

24  concession that Ng's motion has merit. To the contrary, Ng's motion raises a number of

25  erroneous accusations about the FDC's temporary and limited restrictions on his

26  communications with counsel. In particular, Ng mischaracterizes the FDC's actions as a

27  prohibition on "contact with any person in the outside world" and "an outright ban on

28  attorney-client communications." Motion at 1. The current restrictions are no such thing.

*U.S. v. Ng*; CR20-172 JCC
United States' Opposition to Motion to Show Cause - 4

1    Ng and other inmates can communicate with the outside world through written

2    communications or via telephone if ordered by the Court or in case of an emergency.

3    Inmates and attorneys can use such correspondence to alert each other to issues in a case,

4    exchange thoughts on case strategy, and consult about investigations. While mailed

5    communications do progress more slowly and make it more cumbersome to address

6    certain issues, counsel and client can still communicate about the case and make

7    important decisions together. In addition, to the extent something must be addressed

8    immediately, the court can order the FDC to arrange for a telephone call. There is no ban

9    on communications with counsel or the outside world, and Ng and his counsel can

10   continue to communicate.

11          In addition, the current measures are only temporary, not a permanent ban. This is

12   not to downplay the inconvenience of not being able to address every matter with counsel

13   immediately, but rather recognizes that communications will resume soon. This is

14   especially true for Ng, who tested positive approximately one week ago and likely will

15   recover and be in a position to make telephone calls by January 4. Moreover, the short-

16   term nature of these restrictions is particularly relevant to Ng, whose trial is scheduled to

17   start more than six months after legal calls with counsel should resume. Indeed, these

18   short-term restrictions should help to stop the spread of COVID-19 in the FDC and allow

19   Ng and the facility to move forward with more regular phone calls for the rest of the time

20   Ng is in the FDC. In response to the COVID-19 upheaval, the FDC has implemented

21   reasonable and necessary restrictions that help to prevent infection while protecting

22   inmates' rights; these recent and temporary restrictions on routine legal calls are another

23   such unfortunate but necessary measure.

24          Contrary to Ng's suggestion, these restrictions are constitutional. There is no

25   doubt that "inmates must have a reasonable opportunity to seek and receive the assistance

26   of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). But "[n]ot every

27   restriction on counsel's time or opportunity to investigate or to consult with his client or

28   otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."

*Morris v. Slappy*, 461 U.S. 1, 11 (1983). Faced with novel and immense challenges, BOP is doing all it can to keep inmates safe while also protecting their right to counsel, and courts around the country have recognized that the need to protect inmates from the COVID-19 pandemic justifies restrictions on inmate access to attorneys. *See United States v. Kemmerer,* No. 3:19-CR-02513-GPC, 2020 WL 4697982, *8 (S.D. Cal. Aug. 13, 2020) (denying motion to dismiss for claimed deprivation of inmate's right to confidential communication with attorney); *United States v. Brito*, No. 20 Cr. 63 (PGG), 2020 WL 2521458, at *6 (S.D.N.Y. May 18, 2020) (no Sixth Amendment violation where defendant alleged he had one phone call with defense counsel in two months); *United States v. Lee*, No. ELH-19-159, 2020 WL 1974881, at *8 (D. Md. Apr. 24, 2020) (no Sixth Amendment violation where defendant alleged temporary prohibition on legal calls). In light of the health concerns arising from the pandemic and the many months before Ng's trial, the challenges Ng has had communicating with his attorney and the temporary restrictions on legal calls do not violate his constitutional rights.

Ng, moreover, cites no authority to the contrary. He turns to two cases arising from restrictions during the COVID-19 pandemic, but neither case supports his motion. In *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020), the court considered a motion to certify a class of inmates raising five claims against local jails for their response to the COVID-19 pandemic. One claim alleged that the jails violated the inmates' Sixth Amendment rights when they restricted access to attorney video visits. The restrictions appeared to result from mismanagement of the video communication system, in part due to a vacation taken by the person responsible for coordinating the communications. These facts stand in stark contrast to those in this case, where the restrictions have been put in place temporarily to address specific and immediate health needs. In addition, *Criswell* arose from a motion to certify a class and thus was based on a preliminary factual record. The court in *Criswell* did not conclude that a Sixth Amendment violation had occurred, only that the claim was likely

1   enough to succeed that the class could be certified. *Criswell* does not support the

2   conclusion that the current restrictions at the FDC violate Ng's rights.

3   Similarly, the other case related to COVID-19 cited by Ng does not support his

4   motion. In *Banks v. Booth*, 459 F.Supp.3d 143 (D.D.C. 2020), the court granted a

5   temporary restraining order requiring certain prisons to take steps to protect inmates from

6   COVID-19. The inmates claimed that the prison was not adequately protecting them from

7   the virus and therefore was violating their Fifth Amendment and Eighth Amendment

8   rights. The court did not even consider—and it appears the inmates did not even allege—

9   that the conditions violated their Sixth Amendment rights to counsel. In the final order,

10  the court did require some access to telephones, but the order and opinion focused on the

11  need to better protect inmates from disease, not on interference with their access to

12  counsel. Indeed, *Booth* does not even mention the Sixth Amendment. In addition, like

13  *Criswell*, *Booth* is based on a preliminary factual record and does not make any finding

14  that the defendants infringed an inmate's right to counsel. If *Booth* has any bearing here,

15  it would be to support the position that the FDC should protect inmates from COVID-19.

16  Neither of the cases cited by Ng provide any support for his motion.

### III.   CONCLUSION

18  For the reasons stated above, Ng's motion is moot and should be denied.

19  DATED this 23rd day of December, 2020.

21  Respectfully submitted,

22  BRIAN T. MORAN
23  United States Attorney

24  */s/ Nicholas Manheim*
25  NICHOLAS MANHEIM
26  Assistant United States Attorney
    700 Stewart Street, Suite 5220
27  Seattle, Washington  98101
    Phone: 206-553-4399
28  E-mail: Nicholas.Manheim@usdoj.gov

*U.S. v. Ng*; CR20-172 JCC
United States' Opposition to Motion to Show Cause - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970